CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
FRANCISCO MENA,                                 :
                                                :    Civ. No. 13-1508 (SRC)
            Petitioner,            :
                                                :
  v.                                            :    **OPINION**
                                                :
UNITED STATES OF AMERICA,                       :
                                                :
            Respondent.            :
_____             :

**STANLEY R. CHESLER, U.S.D.J.**

## I.    INTRODUCTION

Petitioner is a federal prisoner proceeding *pro se* with a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner pled guilty to one count of receiving stolen goods in interstate commerce and one count of producing/trafficking in a counterfeit device – unlawful use of an access device. Petitioner received a sentence of sixty months imprisonment. For the reasons that follow, the motion will be summarily dismissed due to untimeliness.[1]

## II.    BACKGROUND

Petitioner pled guilty to the receiving stolen goods and unlawful use of access device on December 18, 2006, and was sentenced on March 10, 2010. (*See* Dkt. No. 1 at p. 1.) He did not appeal from the judgment and sentence. (*See id.* at p. 2.) Several years later, he filed a motion to

---

[1] Rule 4(b) of the Rules Governing Section 2255 cases states that, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Furthermore, the court can raise the statute of limitations issue *sua sponte*. *See United States v. Bendolph*, 409 F.3d 155, 165 n.15, 168 (3d Cir. 2005) (en banc) (stating that courts possess the power to *sua sponte* raise the statute of limitations issue in a § 2255 proceeding).

1

vacate, set aside or correct his sentence ("Section 2255 motion") on November 1, 2012.[2] (*See* D.N.J. Civ. No. 12-7269, Dkt. 1 at p. 12.) After being advised of his rights pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999), petitioner requested that his motion to vacate, set aside or correct his sentence be withdrawn so that he could file a complete motion. (*See id.* Dkt. No. 7.) The Court granted petitioner's request on February 20, 2013, and his motion was withdrawn. (*See id.* Dkt. No. 8.)

On March 6, 2013, petitioner re-filed the instant Section 2255 motion. (*See* Dkt. No. 1 at p. 12.) Petitioner raises four claims in the motion. First, petitioner argues that counsel was ineffective in various ways, including that counsel: (a) coerced petitioner to plead guilty by threatening him with twenty to twenty-five years imprisonment if he did not plead; (b) coerced petitioner to confess to any past illegal activity; (c) coerced petitioner to help the government, even though petitioner did not receive a 5K1.1 downward departure; (d) failed to advise petitioner about deportation and prison time before he entered into a plea agreement; (e) failed to investigate before trial; (f) failed to provide an interpreter except at sentencing; (g) failed to read and discuss the plea agreement and pre-sentence report with petitioner; (h) failed to explain to petitioner the rights he was losing by choosing to plead; (i) failed to ascertain and object to an invalid valuation increase for the stolen goods, which permitted an increase in petitioner's sentence; (j) failed to argue an allegation of newly found illegal activity; (k) failed to argue the irregular March 9, 2010 arrest date and March 10, 2010 sentencing date; (l) conspired in count two as petitioner admitted to an amount of $5,000 of producing/trafficking in a counterfeit device not $50,000; (m) failed to address the government's miscalculation of camera equipment

---

[2] Pursuant to the prisoner "mailbox rule," petitioner's filings are deemed filed on the date he delivered them to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 270-271 (1988); *see also Pabon v. Mahoney*, 654 F.3d 385, 391 n. 8 (3d Cir. 2011) (citing *Burns v. Mahoney*, 134 F.3d 109, 113 (3d Cir. 1998)).

2

value; (n) failed to address that there was no grand jury indictment; and (o) failed to appeal the case. Petitioner's second claim asserts that the prosecutor engaged in misconduct by using law enforcement's false account of petitioner's mother's identification of petitioner from a photograph. Petitioner's third claim asserts that he is actually innocent and pled guilty only on account of trial counsel's pressure to do so. Finally, petitioner claims that Title 18 of the United States Code is unconstitutional.

The Court ordered petitioner to show cause why the instant motion should not be dismissed due to untimeliness. Petitioner has submitted a response to the order to show cause. (*See* Dkt. No. 9.)

### III. STATUTE OF LIMITATIONS ANALYSIS

Section 2255(a) provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The statute of limitations period for petitioner's Section 2255 motion is set forth in 28 U.S.C. § 2255(f), which states as follows:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
>> the date on which the judgment of conviction becomes final;
>> the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> the date on which the right asserted was initially
> recognized by the Supreme Court, if that right has been
> newly recognized by the Supreme Court and made
> retroactively applicable to cases on collateral review; or
> the date on which the facts supporting the claims or
> claims presented could have been discovered through the
> exercise of due diligence.

A judgment of conviction becomes final under § 2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari expires. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999). Where a defendant does not pursue a timely appeal to the court of appeals, his conviction becomes final, and the statute of limitations begins to run on the date on which the time for filing such an appeal expired. *See id*.

In this case, petitioner did not file an appeal to the United States Court of Appeals for the Third Circuit. His judgment of conviction was entered on March 10, 2010. Therefore, petitioner's judgment became final on March 24, 2010. *See* FED. R. APP. P. 4(b)(1)(A)(1) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days . . . of the entry of either the judgment or the order being appealed.") Petitioner's statute of limitations to file a § 2255 motion expired one year thereafter, or on March 24, 2011. Therefore, even if the Court uses the filing date of petitioner's first § 2255 motion in Civ. No. 12-7269, November 1, 2012, for statute of limitations purposes, petitioner filed his motion over eighteen months after the statute of limitations expired.

Petitioner argues in response to the order to show cause that his claim of actual innocence overcomes the statute of limitations. Recently, in *McQuiggin v. Perkins*, - U.S. -, 133 S. Ct. 1924, 1928 (2013), the United States Supreme Court held that actual innocence can serve as a

4

gateway whereby a petitioner can pass through the expiration of the statute of limitations. The Supreme Court cautioned courts however, that using actual innocence as a gateway to overcome the statute of limitations is rare as "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (internal quotation marks and citations omitted). In analyzing an "actual innocence" exception to the statute of limitations, the Supreme Court further explained that "a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* (quoting *Schlup v.* 513 U.S. 298, 327 (1995)).

Furthermore, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Id.* Indeed, the Supreme Court stated that "'[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence].'" *Id.* at 1935 (quoting *Schlup*, 513 U.S. at 332). The Supreme Court determined that:

> Focusing on the merits of a petitioner's actual-innocence claim and taking account of delay in that context, rather than treating timeliness as a threshold inquiry, is tuned to the rationale underlying the miscarriage of justice exception – i.e., ensuring "that federal constitutional errors do not result in the incarceration of innocent persons."

*Id.* at 1936. Additionally, the actual innocence "gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* (internal quotation marks and citation omitted).

In support of his actual innocence argument, petitioner relies on the affidavits of his mother and former girlfriend. Petitioner's mother's affidavit is dated June 18, 2013 and is in

5

Spanish. Petitioner claims that his mother states in her affidavit that she was shown a photograph, but, contrary to the federal agents' claims to petitioner, she told them that the individual in the photograph was not her son. Furthermore, his mother purportedly told the agents that petitioner lived in Florida at the time of the events giving rise to the criminal charges occurred. Petitioner's ex-girlfriend executed an affidavit dated June 20, 2013. She declares that during the month of June 2005 (when the incidents giving rise to the charges occurred), petitioner was living with her in Florida and that he did not leave the state at that time.

As the Supreme Court noted in *McQuiggin*, a court can consider the timing of the submissions as well as the likely credibility of petitioner's affiants in helping to determine whether the evidence of innocence is strong enough to overcome the timeliness bar. In this case, the Court finds that the evidence that petitioner has submitted of his actual innocence is insufficient to overcome the timeliness bar. First, the Court considers the timing of the affidavits. Petitioner does not explain why he waited over three years after his judgment, and over two years after the statute of limitations expired to obtain affidavits from his mother and ex-girlfriend. Petitioner has not explained why he could not have obtained the information from these witnesses prior to June 2013. Additionally, the information that these witnesses purport to provide in their affidavits with respect to where petitioner was living in 2005 would not have been new information to petitioner. Indeed, petitioner himself would have been aware of where he was living at the time of the incidents giving rise to the charges against him occurred. In *McQuiggin*, the Supreme Court noted with approval the District Court's appraisal that the petitioner had failed to satisfy the actual innocence threshold when it stated in part that the purported new evidence was "substantially available" to the petitioner at trial. *See* 133 S. Ct. at 1928. Similarly, where petitioner was living at the time of the crimes would have been

"substantially available" to petitioner at the time of his plea because it would have been known to petitioner himself.

Second, petitioner's mother and ex-girlfriend testimony could be easily impeached at trial for bias in light of their relationship to petitioner. *See Bergmann v. MCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995). Finally, the Court notes that this is not a case where petitioner contested his innocence by going to trial. Instead, petitioner admitted to his guilt by pleading guilty. This admission constitutes a formidable barrier in these proceedings as "'[s]olemn declarations in open court carry a strong presumption of verity.'" *Lesko v. Lehman*, 925 F.2d 1527, 1537 (3d Cir. 1991) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). Under these circumstances, petitioner has failed to satisfy the rare actual-innocence gateway to make his motion timely.

While petitioner's actual innocence gateway argument fails, petitioner can also overcome the time bar if he can show a basis for equitable tolling. The Supreme Court has stated that, "[g]enerally, a litigant seeking equitable tolling [of the AEDPA statute of limitations] bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also United States v. Bass*, 268 F. App'x 196, 199 (3d Cir. 2008). "Equitable tolling is a remedy which should be invoked 'only sparingly.'" *Id.* (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990))).

With respect to the diligence that is necessary for equitable tolling, the Third Circuit has stated:

> The diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence.

> *Holland* [*v. Florida*], 130 S. Ct. [2549,] at 2565 [(2010)]. "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well." *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (citing *Jones* [*v. Morton*, 195 F.3d [153,] 160 [(3d Cir. 1999)]. A determination of whether a petitioner has exercised reasonable diligence is made under a subjective test: it must be considered in light of the particular circumstances of the case. . . . The fact that a petitioner is proceeding pro se does not insulate him from the "reasonable diligence" inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling. *See Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003).

*Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013) (internal citations omitted). Extraordinary circumstances may be found where (1) the petitioner has been actively misled; (2) the petitioner has in some extraordinary way been prevented from asserting his rights; or (3) where the petitioner has timely asserted his rights in the wrong forum. *See Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) (citing *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999)). However, "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Id.* (citations omitted).

Petitioner claims that he is entitled to equitable tolling due to counsel's ineffectiveness. Specifically, he argues as follows:

> [A]ccording to the F.B.I. and the U.S. Marshall interviewing Petitioner, Federal Agents stated that they had a surveillance video snapshot that was him and the invoice that they had had his fingerprints on it. They further continued by lying stating that they had already questioned his mother and she positively identified him in the snapshot.
> Since the evidence, if true, would be so damaging and conclusive, [counsel] would know his obligatory duties involved; 1) a Motion for Discovery pursuant to *Brady*; 2) personally question Petitioner's mother ascertaining the lies of the Federal Agents; and 3) interview the government witness to discredit him.

8

> The questioning of the mother would served [sic] a two fold purpose. One; obviously the snapshot the Federal Agents used to coerce Petitioner was a blatant lie . . . . [Counsel] would have discovered this and then argued it instead of acceptances. Two; [counsel] would have ascertained that Petitioner was in Florida during the crime.

(Dkt. No. 9 at p. 2-3.)

Thus, Petitioner contends that had counsel done further investigation, he would have determined that federal agents were lying to him when they told him his mother had identified him as well as determined that petitioner was living in Florida at the time that the circumstances giving rise to the charges against petitioner occurred.

At the outset, the Court reiterates that attorney errors or mistakes generally do not rise to the level of extraordinary circumstances. *See Fahy*, 240 F.3d at 244; *see also Garcia v. Bartkowski*, No. 11-3689, 2012 WL 3149099, at *5 (D.N.J. Aug. 1, 2012) ("Ineffective assistance of counsel is not generally considered an extraordinary circumstance justifying equitable tolling."). Furthermore, even if petitioner is able to show that counsel's purported ineffectiveness amounted to an "extraordinary circumstance," that is not enough to warrant equitable tolling. Instead, "a petitioner must also show that he acted with reasonable diligence, and that the extraordinary circumstances caused his petition to be untimely." *Reed v. Harlow*, 448 F. App'x 236, 238 (3d Cir. 2011) (internal quotation marks and citations omitted).

As stated above, petitioner argues that further investigation by counsel would have led him to conclude that petitioner was living in Florida at the time the crimes were committed. Presumably this investigation would support petitioner's actual innocence claim. However, petitioner himself was presumably aware of where and when he was living in Florida. Accordingly, petitioner fails to show how this alleged error by counsel for failing to investigate prevented petitioner from filing a timely § 2255 motion. Similarly, petitioner fails to show, nor

does the record show, how counsel's purported ineffective performance by failing to question petitioner's mother about the photograph caused petitioner to file an untimely § 2255 motion. *Accord Cacho v. Tennis*, No. 07-4340, 2009 WL 2232910, at *6 (E.D. Pa. July 23, 2009) (declining to equitably toll statute of limitations where petitioner does not allege and record does not show how counsel's errors prevented petitioner from filing a timely federal habeas petition). For these reasons, petitioner fails to show that he is entitled to equitable tolling.

## IV. APPLICATION TO EXPEDITE

Petitioner filed a motion to expedite these proceedings after the Court issued the order to show cause. In light of the untimeliness of petitioner's § 2255 motion, the motion to expedite will be denied.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Applying this standard, the Court finds that a certificate of appealability shall not issue in this case.

## VI. CONCLUSION

For the foregoing reasons, the Section 2255 motion will be summarily dismissed due to untimeliness. A certificate of appealability shall not issue. An appropriate order will be entered.


DATED: August 8, 2013                                    s/ Stanley R. Chesler
                                                         Stanley R. Chesler, U.S.D.J.